**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **NEWCSI, INC.** | § | |
| | § | |
| **v.** | § | **A-14-CV-557-LY** |
| | § | |
| **STAFFING 360 SOLUTIONS, INC.** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Plaintiff NewCSI, Inc.'s Opposed Motion for Award of Attorney's Fees (Dkt. No. 92); Defendant's Response in Opposition (Dkt. No. 95); Plaintiff's Reply (Dkt. No. 98); and Defendant's Sur-Reply (Dkt. No. 103). The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

This is a breach of contract case. Plaintiff NewCSI, Inc., ("NCSI") is a Delaware corporation headquartered in Austin, Texas. Defendant Staffing 360 Solutions, Inc., ("Staffing 360") is a Nevada corporation headquartered in New York City, New York. This case derives from Staffing 360's acquisition of Control Solutions International, Inc. ("CSI"), accomplished when Staffing 360 purchased 100% of the outstanding shares of CSI from NCSI, pursuant to the terms of the Stock Purchase Agreement ("SPA") dated August 14, 2013. *See* Dkt. No. 12-2. NCSI originally brought the case in state court seeking damages for breach of contract and a declaratory judgment related to Staffing 360's failure to calculate and pay the Deferred Tax Benefit pursuant to Paragraph 2.7 of the Stock Purchase Agreement. Staffing 360 removed the case to federal court based on diversity jurisdiction.

Ultimately, the District Court conducted a jury trial beginning on May 14, 2015, and concluding on May 20, 2015. The jury returned its verdict, finding that Staffing 360 failed to comply with Paragraph 2.7 of the SPA, thereby accelerating maturity of an "Earn Out" totaling $1.4 million (less the amount of any Earn Out previously paid to NCSI) pursuant to Paragraph 2.2(d)(ii) of the SPA. Likewise, the jury returned a verdict regarding the calculation of the Deferred Tax Benefit, finding that $154,433 would fairly and reasonably compensate NewCSI for damages resulting from Staffing 360's failure to comply with Paragraph 2.7. Judgment was entered on the verdict on October 21, 2015. Dkt. No. 90.

NCSI now requests the Court to award it reasonable attorney's fees under Texas law allowing for the recovery of fees to the prevailing party in a breach of contract case. TEX. CIV. PRAC. & REM. CODE § 38.001(8) (West 2008). Staffing 360 argues that the SPA contained a choice of law provision dictating that New York Law controls, and that under New York law, NCSI is not entitled to attorney's fees. NCSI asserts that if Texas law does not apply, it is still entitled to fees under New York law.

## II. Analysis

### A.   *Does New York Law Control the Award of Fees?*

Texas Civil Practice and Remedies Code § 38.001(8) provides that the prevailing party in a breach of contract claim is entitled to attorney's fees. New York law does not contain a similar statutory provision providing for fees. Section 10.1 of the SPA states that "[t]his Agreement . . .(d) shall be governed by, and construed in accordance with, the internal laws (and not the law of conflicts) of the State of New York . . . ." (Dkt. No. 12, Ex. 2). Staffing 360 argues that this provision dictates that New York law applies to the issue of whether NCSI is entitled to recover its attorney's fees incurred in obtaining a judgment against Staffing 360 for breach of the SPA.

2

In diversity cases, such as this one, a district court generally applies the choice of law rules of the forum state. *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014); *Jackson v. W. Telemarketing Corp. Outbound*, 245 F.3d 518, 521 (5th Cir. 2001). Texas courts permit choice of law agreements and the default position is that they are enforceable, however a party may overcome a choice of law agreement if it can show that: 1) the law chosen by the parties does not have a reasonable relationship with the parties and the chosen state; and 2) the law of the chosen state is contrary to a fundamental policy of the State of Texas. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990) (following Restatement (Second) of Conflict of Laws § 187(2)7)). Staffing 360's headquarters are located in New York thereby showing a substantial relationship between the parties and the laws of New York, *see McGowan & Co. v. Bogan*, 93 F.Supp. 3d 624 (S.D. Tex. 2015), and NCSI has not argued that New York law is contrary to a fundamental policy of the State of Texas. NCSI has failed to convince the Court that the choice of law provision is unenforceable.

Instead, NCSI argues that the award of attorney's fees is governed by the law of the state whose substantive law is applied to the underlying claims and that is Texas law in this case. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Because the parties and the Court agreed throughout the litigation that the substantive law of Texas and New York were identical on the relevant breach of contract issues, the question of which state's law governed the contract did not have to be decided, and thus it was not reached.[1] Because the law of Texas and New York are not aligned on the issue of attorney's fees, the Court must now reach that issue. The decision is not difficult, however, as clear Fifth Circuit precedent holds that in litigation based on a contract containing a valid and enforceable choice of law clause, the parties' choice of law governs both the

---

[1]The District Judge applied Texas law in calculating prejudgment interest.

interpretation of the contract and the award of attorney's fees. *Exxon Corp. v. Burglin*, 4 F.3d 1294, 1299 (5th Cir. 1993); *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 73 (5th Cir. 1987).

NCSI does not challenge the validity or the enforceability of the choice of law provision in the SPA. Further, nothing in the Court's or the parties' course of conduct in the case precludes the Court from finding that the choice of law provision in the SPA is applicable to the attorney's fees issue. Applying Section 10.1 of the SPA, it is plain that New York law governs the issue of attorney's fees in this case. The question thus becomes, is NCSI entitled to recover its attorney's fees in this case under New York law?[2]

**B.    *Is NCSI Entitled to Fees Under New York Law?***

Under New York law, parties are permitted to shift attorney's fees by contract, but their "intention to do so [must be] unmistakably clear from the language of the promise." *Hooper Assoc., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 492 (1989). Accordingly, contract clauses providing for indemnification of attorney's fees must be narrowly interpreted. *Id.* at 491. ("When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.") (citations omitted). However the parties' intention to shift attorney's fees can be manifest from the surrounding facts and circumstances or purpose of the agreement. *See id.* (citing *Breed, Abbott & Morgan v. Hulko*, 139 A.D.2d 71, 531 N.Y.S.2d 240 (1st Dep't 1988), aff'd, 74 N.Y.2d 686, 543 N.Y.S.2d 373 (1989)); *Promoto v. Waste Mgmt., Inc.*, 44 F.Supp.2d 628, 650 (S.D. N.Y. 1999) (citing *Hooper*, 74 N.Y.2d

---

[2]Staffing 360 argues that NCSI may not assert its argument that it is entitled to attorney's fees under New York law because it first made that argument in its reply brief. NCSI responds by pointing out that until Staffing 360 filed its response contending New York applied to this issue, it had been led to believe Staffing 360's position was that Texas law governed attorney's fees, and thus it did not brief New York law initially. Because the Court has given Staffing360 the opportunity to respond to all of NCSI's arguments by allowing it to file a Sur-Reply, Staffing 360 has not been prejudiced by NCSI briefing the New York law issues in its Reply, and the Court rejects Staffing 360's argument that NCSI has waived its right to seek fees under New York law.

at 492); *see LaSalle Bank v. Capco American Securitization Corp.*, No. 02 Civ. 9916, 2005 WL
3046292, at *6 (S.D. N.Y. Nov. 13, 2005) (holding that an agreement allowing for the "recovery of
any expenses arising out of the enforcement of the repurchase obligation" establishes an intention
to shift attorney's fees). The Court must read the indemnification provision in conjunction with all
other provisions in the agreement to avoid inconsistencies or an interpretation which would render
a contract provision superfluous or without effect. *See Hooper*, 74 N.Y.2d at 492-93.

NCSI relies on two provisions of the SPA in support of its claim that it is entitled to recover
attorney's fees under New York law. First, it cites to Section 2.2(d) of the SPA, which  states in
relevant part:

> (d)      Adjustment to Earn Out.  The Purchaser acknowledges and agrees that the
> following events ("Adjustment Events") may have a negative impact on CSI and
> NCSI's consolidated gross profit.  The Purchaser further acknowledges that the actual
> damages likely to result from an Adjustment Event are difficult to estimate on the
> date of this Agreement and would be difficult for NCSI or the Shareholders to prove.
> Therefore, the Purchaser acknowledges and agrees that, upon the occurrence of an
> Adjustment Event, the purchaser shall pay NCSI an amount equal to, in the case of
> Adjustment Event listed in (I), (ii), (iii) or (iv) below, $1.4 million less the amount
> of any Earn Out previously paid to NCSI or the Shareholders; and in the case of all
> other Adjustment Events, $2.1 million less the amount of any Earn Out previously
> paid to NCSI or the Shareholders (the "Adjustment Amount"), provided that the
> Shareholders of NCSI has [sic] provided written notice to the Purchaser alleging that
> an Adjustment Event set forth in (v), (vi) or (vii) has occurred. *Additionally, the
> Purchaser agrees to pay any reasonable legal fees of NCSI or the Shareholders in
> connection with the collection of any Earn Out.*  The Parties intend that the
> Purchaser's payment of the Adjustment Amount would serve to compensate NCSI
> and the Shareholders for any Adjustment Event, and they do not intend for it to serve
> as a penalty to the Purchaser for any such Adjustment Event.

Dkt. No. 68-16 at § 2.2(d) (emphasis added).  NCSI argues that because its damages at trial were
based on the $1.4 million "Adjustment Amount" described in this section of the Agreement, it is
entitled to recover attorney's fees, pursuant to the italicized language. Staffing 360 responds that this
language of § 2.2(d) is not applicable here.  It points out that it was undisputed at trial and throughout
the litigation that Staffing 360 timely and fully made every Earn Out payment due.  Staffing 360

5

argues that at trial NCSI's claim was that an "Adjustment Event" was triggered under the Agreement, leading to its recovery of the liquidated damages entitled the "Adjustment Amount," and that the relevant language on applies to a suit to collect an "Earn Out."

Staffing 360 is correct that the plain language of Section 2.2(d) only provides for the payment of legal fees of NCSI and the Shareholders "in connection with the collection of any Earn Out." As noted, this was not a suit to collect an unpaid Earn Out, but rather was a suit contending that Staffing 360 had breached the Agreement by not paying to NCSI 50% of a Deferred Tax Asset, as called for in § 2.7 of the Agreement, and seeking to recover the $1.4 million Adjustment Amount thereby triggered by § 2.2(d). The Court recognizes it is odd that language entitling NCSI and the Shareholders to recover fees for collecting an Earn Out is contained in a section of the contract that deals with setting the "Adjustment Amount," but the language of the pertinent sentence could not be more clear.[3] The Agreement plainly distinguishes between "Earn Outs" and "Adjustment Amounts," as both are capitalized, defined terms. Given this, the Court cannot conclude that the language of § 2.2(d) makes it "unmistakably clear" that the parties intended to allow for the recovery of attorney's fees by NCSI or the Shareholders on a suit not seeking to collect an Earn Out. *Hooper*, 74 N.Y.2d at 492.

For its second contractual basis for fees, NCSI relies on § 8.2 of the Agreement, which is a multi-section indemnification clause. Subsection (b) of that clause provides that:

> Subject to the terms of this Agreement, including without limitation the floor and the cap on indemnification set forth in Section 8.2(c), the Purchaser agrees to indemnify, defend, save and hold harmless, NCSI and the Shareholders and NCSI's officers, directors, employees, agents, and representatives from and against any Damages

---

[3]The location of the sentence would make much more sense if it provided for the recovery of attorney's fees "in connection with the collection of *an Adjustment Amount*" instead of "*any Earn Out*," and perhaps the sentence was meant to read as such. There is, however, no evidence suggesting that the term "Earn Out" was mistakenly used in place of "Adjustment Amount," and regardless, as noted in the text, the meaning of the sentence that actually *is* in the Agreement is clear.

6

arising out of or resulting from: (I) any inaccuracy in or breach of any representation or warranty of the Purchaser in this Agreement; or (ii) any failure of the Purchaser to perform or observe fully any covenant, agreement or provision to be performed or observed by it pursuant to this Agreement.

Dkt. No. 68-16 at § 8.2(b).  As noted by its capitalization, "Damages" is a defined term, and means "any loss, cost, expense, liability, claim or legal damages (*including, without limitation, reasonable fees and disbursements of counsel*) (collectively "Damages.").  *Id.* at § 8.2(a).  NCSI contends that its claim against Staffing 360 for breach of the Agreement falls within the scope of § 8.2(b)(ii), and thus it is entitled to recover its attorney's fees under this indemnity language.  Staffing 360 points out that *Hooper* and its progeny hold that an indemnification clause may only be the basis for the recovery of attorney's fees if it is "unmistakably clear" that the clause was intended by the parties to apply to "first party," claims (*i.e.*, claims between the parties to the contract), as opposed to only third party claims, the types of claims indemnity clauses are primarily focused upon.  Staffing 360 contends that the clause in the Agreement does not meet the requirements of *Hooper*.  It relies on three cases in support of this argument:  *Hooper*;  *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004); and *EMC Mortgage Corp. v. MortgageIT*, 2006 WL 4286676, at * 1 (N.D. Tex. Oct.12, 2006) (unreported).

All three of these cases involve indemnification clauses that were found to be insufficiently clear to provide a contractual basis for an award of attorney's fees.  *Hooper* held that the terms of an indemnification clause must apply "exclusively" or "unequivocally" to a claim between the parties, or support an inference that one party promised to indemnify the other for counsel fees in an action on the contract.  In concluding that the contract before it failed to meet these criteria, the *Hooper* court examined several portions of the contract, particularly the provision that required that the parties were required, without exception, to give notice to the other of claims for indemnity, and the clause allowing the indemnifying party to assume the defense of the action. It concluded that "to extend the indemnification clause to require defendant to reimburse plaintiff for attorney's fees in

7

the [inter-party] action would render [the notice] provision[ ] meaningless because the requirement of notice and assumption of the defense has no logical application to a suit between the parties."  74 N.Y.2d at 492-93.  The court found that because the indemnification clause of the contract could be read sensibly, and consistently with the rest of the contract, as applying to third party claims only, it would not expand it beyond that reach to allow the recovery of attorney's fees, as there was no indication in the contract that the parties intended it to apply further than that.  The *EMC Mortgage* case followed *Hooper*, and found that the indemnification clause there did not contain any express language indicating that it applied to claims between the contracting parties, and could not reasonably be construed as applying to inter-party claims.  Therefore, it found that the clause could not support the award of attorney's fees in a suit between the parties to the contract.  2006 WL 4286676 at *2-3.

*Braspetro* related to a more narrow issue regarding the meaning of "legal costs" and whether it encompassed attorney's fees.  After reviewing the relevant New York case law and finding nothing directly on point, the Second Circuit turned to three dictionary definitions of "legal costs," only one of which included "attorney's fees."  369 F.3d at 74-77.  In the absence of any extrinsic evidence suggesting the parties' intentions on this point, and faced with "two, equally valid interpretations" of the provision, the Second Circuit concluded that "it [was] not unmistakably clear that the use of the term 'legal costs' in [the parties' contract] was intended to obligate" the breaching party to pay attorney's fees, and thus no recovery of fees was permitted.  *Id.* at 77.

Applying the reasoning of these cases to our facts, Staffing 360 contends that the language in Section 8.2(d) is similar to the language in *Hooper*, which that court found did not "unmistakably" and "clearly" allow for attorney's fees in a suit between the parties.  Staffing 360 also argues that the best NCSI can do is cobble together various sections of the Agreement to support its argument that it is entitled to fees, and the alleged complexity of its argument actually shows the contrary—that the

Agreement is not "unmistakably clear" on the issue of fee shifting.  NCSI disagrees, and notes that the indemnity provision in this case *does* contain clear evidence that it was intended by the parties to apply not only to third party claims, but also to claims between the parties.   It argues that unlike *Hooper*, the clause here only requires notice of an indemnity claim when the claim is a third party claim.  *See* Dkt. No. 68-16 at § 8.2(d).  It points out that this clause would make no sense unless the parties intended the clause to apply also to first party claims.  Additionally, NCSI relies on § 8.2(e), which contains a definition of "third party claim," which it argues also would make no sense if all indemnification claims covered by the clause were third party claims.

Whether this case differs from *Hooper* and similar cases involving fee-shifting provisions in indemnity agreements depends on the construction of § 8.2, and specifically, § 8.2(d).  The relevant language of that subsection states:

> The Indemnified Party shall deliver notice of any claim for indemnity under Section 8.2(a) or Section 8.2(b), as applicable, in writing to the indemnifying Party promptly after a discovery by the Indemnified Party of such claim, setting forth with reasonable specificity the amount claimed and the underlying facts supporting such claim to the extent known by the Indemnifying Party; provided however, that the failure of the Indemnified Party to so notify the Indemnifying Party shall not relieve the Indemnifying Party of its obligation to indemnify under this Agreement *unless the claim arises from a third party* and the rights of the Indemnifying Party are thereby materially prejudiced.

Dkt. No. 68-16 at § 8.2(d) (emphasis added).  The Court agrees that this language distinguishes this agreement from that in *Hooper*.  The deciding factor in *Hooper* was the fact that there was *no* exception to notice for first party claims; the language above is the very sort of exception missing in *Hooper*.  Importantly, a judge in the Southern District of New York reached a very similar conclusion in *Promuto v. Waste Management, Inc.*, 44 F.Supp.2d 628 (S.D. N.Y. 1999).  Like here, the indemnity language of the contract in *Promuto* contained a section stating that "in the event that any *third party* asserts a claim against any [Seller Indemnitee] which may result in a claim for indemnification against the Purchaser, then such Seller Indemnitee shall promptly give written notice

to the Purchaser of such claim." *Id.* at 651 (emphasis added).  The court concluded that "in sharp contrast to the agreement in *Hooper*, [the Agreement] evinces a clear intent to distinguish between inter-party claims and third-party claims, with the notice and defense provisions applying exclusively to the latter." *Id.* at 652.  The same logic applies here.

Finally, this reading is further bolstered by the language in Section 8.2(e).  That section elaborates on the rights of the parties in the event one of them receives notice from the other of a third party claim:

> After receipt by the Indemnified Party of notice of the commencement of any action or other claim by a third party that may give rise to a claim of indemnity hereunder (a "third party claim"), the Indemnified Party will, in a timely manner, notify the Indemnifying Party of the third party claim, but the failure to notify Indemnifying Party shall not relieve the Indemnifying Party of its obligation to indemnify under this Agreement unless the lack of timeliness materially prejudices the Indemnifying Party's ability to defend against such third party claim. After receipt of such notice the Indemnifying Party shall, in a timely manner, undertake the defense or settlement of such third party claim with counsel reasonably satisfactory to the Indemnified Party (who shall not, except with the consent of the Indemnified Party, be counsel to the Indemnifying Party). The Indemnifying Party shalt not settle any such action without the consent of the Indemnified Party, which shall not be unreasonably withheld.

Dkt. No. 68-16 at § 8.2(e).  This subsection, defining "third party claim," and specifically identifying the parties' rights when—and only when—the claim is a "third party claim," would be unnecessary and meaningless if the whole of § 8.2 was intended only to address third party claims.  Because the contract, read as a whole, is clear and unmistakable on the issue of the indemnity clause applying to first party claims, and because that clause expressly allows for the recovery of attorney's fees, NCSI is entitled to recover its attorney's fees under New York law.

### C.   *Amount of Fee Award*

NCSI requests fees in the amount of $504,729.27.  NCSI supports its fee request with invoices and affidavits.  Dkt. No. 92, Exs. A - C-2).  Staffing 360 has not disputed the amount or calculation of the fees, but rather only argues that fees are not available to NCSI under New York

law.  As noted above, the Court has concluded to the contrary.  Because the amount of attorney's fees requested by NCSI is uncontested, and because the Court finds that the fees requested are supported by the evidence, and are reasonable in this locality for the complexity and work involved in this case, the Court concludes that NCSI is entitled to attorney's fees in the amount of $504,729.27.[4]

NCSI also requests $75,000 for attorney's fees it will incur when and if an appeal is taken from the judgment in this case.  This request is premature.  It is well settled in this circuit that a denial of appellate attorney's fees by the district court before an appeal is taken is proper.  *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 433 (5th Cir. 2003) ("It is difficult to imagine how a district court's refusal to award appellate attorney fees before an appeal had even been taken could possibly be declared an error.").  Rather, "[t]he issue of appellate attorney's fees is a matter for the district court following the resolution of an appeal." *Id.*  Thus the Court denies NCSI's request for appellate attorney's fees as premature.

### III. Recommendation

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART** Plaintiff NewCSI, Inc.'s Opposed Motion for Award of Attorney's Fees (Dkt. No. 92) and **AWARD FEES** in the amount of $504,729.27.

### IV. Warnings

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.

---

[4]In requesting its fees, NCSI used the Fifth Circuit's well-settled "lodestar" approach, as originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See, e.g., Black v. SettlePou, P.C.*, 732 F.3d 492, 496 (5th Cir. 2013) (calculating fees "by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work" and then "enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth" in *Johnson*).  Though New York law applies to the issue, this is a universally-used method of calculating fees, and is appropriate here.

The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of January, 2016.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE

12